**MORTGAGE ELECTRONIC REG-ISTRATION SYSTEMS, INC.,**
Appellee

v.

**Betty M. MALEHORN, a/k/a Betty Mae Malehorn, Appellee**

v.

**Coann Elaine Miller, Appellant.**

Superior Court of Pennsylvania.

Filed Feb. 25, 2011.

Joseph T. Sucec, Gardners, for appellant.

Robert G. Radebach, Halifax, for Malehorn, appellee.

Anthony J. Foschi, Harrisburg, for Mortgage Electronic, appellee.

BEFORE: GANTMAN, LAZARUS, and MUNDY, JJ.

OPINION BY MUNDY, J.:

Appellant, Coann Elaine Miller, appeals from the order entered on March 10, 2010, which denied her petition to intervene in the mortgage foreclosure action between Mortgage Electronic Registration Systems, Inc., and Betty M. Malehorn. Upon review, we quash this appeal.

The following aptly summarizes the relevant factual and procedural background of this appeal.

The property at issue in this somewhat convoluted foreclosure action is a 1.55 acre piece of land in Middle Paxton Township (hereinafter the "Property"). There are two dwellings on the property. The first is a two story house, with an address of 1150 Peters Mountain Road, Dauphin, PA, currently occupied by John Malehorn, the administrator of his late mother Betty Malehorn's estate. The second dwelling is a mobile home situated immediately to the rear of the Malehorn house. The mobile home has been on the property since the 1980's, and was purchased on August 17, 2001, by [Appellant], Coann E. Miller (hereinafter [Appellant]). The mobile home has an address of 11 Peck Lane, Dauphin, PA. In addition to purchasing the mobile home, [Appellant] entered into an installment land-sale contract in 2001 with John and Betty Malehorn, to transfer part of the Property to [Appellant]. See Petition to Stay Sheriff's Sale, Exhibit B. The contract included a clause that gave the [Malehorns] the responsibility for seeking a variance to subdivide the Property into separate lots, and if the township refused then the [Malehorns] would be required to lease a greater size lot such that the subdivision would be approved. See Petition to Stay Sheriff's Sale, Exhibit B, ¶ 3.

In 2002, Betty [Malehorn] took out a mortgage for $128,000.00 from First Central Mortgage. The mortgage included the area leased to [Appellant], but neither John Malehorn nor [Appellant] were named as co-Mortgagors. After a series of transfers, the mortgage was assigned to Plaintiff Mortgage Electronic Systems Inc. (hereinafter "MERS"), by assignment dated February 12, 2003. The mortgage eventually went into default, which led to the current case at hand.

[Appellant] continued to make the required payments on the property until 2004, when she was informed by Middle Paxton Township that subdivision of the Property would not be permitted. [Appellant] then discontinued making payments on the Property in 2004.

. . .

The current action began on December 30, 2002, by a Mortgage Foreclosure Complaint filed by MERS against Defendant Betty M. Malehorn to recover possession of the Property in question. The matter was thoroughly litigated by the two parties until September 29, 2009, when [Appellant] filed a Petition to Intervene. Also filed with [Appellant]'s Petition was a Proposed Answer to be accepted by the [trial] [c]ourt should [it] allow her to intervene, which included a total of nine cross claims and counterclaims. Both MERS and Defendant Malehorn filed responses to [Appellant]'s Petition. [The trial court] held Oral Argument on March 10, 2010, and on March [10], 2010, [the trial court] denied [Appellant]'s Petition to Intervene.

In addition to the current foreclosure action, Miller has also attempted to address her alleged ownership interest in the subject Property in another proceeding [ . . . ]. On December 7, 2001, [Appellant] filed an Adversary Proceeding in The United States Bankruptcy Court for the Middle District of Pennsylvania alleging an ownership interest in the aforementioned Property. *See* 1:07–bk–01733–MDF. On September 3, 2008, the United States Bankruptcy Court Judge Mary France presiding over the case, allowed [Appellant] to seek a variance with the Middle Paxton Township Zoning Hearing Board, however the variance was denied on December 23, 2008. On April 1, 2009, after [Appellant] failed to appeal the Zoning Hearing Board's decision to the Court of Common Pleas of Dauphin County, Judge France entered an Order dismissing [Appellant]'s Adversary Proceeding. *See* Plaintiff's Reply Brief in Opposition to Defendant–Intervenor's Brief in Support of 1925 Statement, Exhibit A.

On August 8, 2009, Miller filed a Motion for Relief from the August 1, 2009 Adversary Proceeding Judgment with the Bankruptcy Court, which was denied on August 19, 2009. Although [Appellant] appealed the Order denying her Motion for Relief to the United States District Court for the Middle District of Pennsylvania, the District Court dismissed the appeal on December 10, 2009, for failure to file required briefs. (Docketed by the U.S. District Court on September 28, 2009, *See* 1:09–cv–1857). Curiously, [Appellant] also filed a voluntary Motion to Dismiss her Bankruptcy Action with the Bankruptcy Court on December 1, 2009, but then later re-filed a Chapter 13 Bankruptcy Petition in Bankruptcy Court on December 27, 2009, which is still ongoing. *See* 1:09–bk–09931–MDF.

Also pending before [the trial court] is the companion ejectment action against [Appellant], docketed at 2006–CV–3608–EJ and filed in 2006, by John Malehorn as the administrator of his mother's estate upon her death in 2005. Although the ejectment action is closely related to the current foreclosure action, [the trial court], on April 26, 2010, ordered the deferral of any action in the ejectment case until the intervention issues on appeal in this foreclosure case have been resolved.

Trial Court Opinion, 9/9/10, at 2–5; Certified Record (C.R.) at 58.

By order entered March 10, 2010, the trial court denied Appellant's petition to intervene. Appellant filed a timely notice of appeal on April 9, 2010. Thereafter, on April 26, 2010, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). C.R. at 50–A. Appellant complied with the trial court's order on

May 17, 2010. C.R. at 52. On August 19, 2010, Appellant was granted *in forma pauperis* status. C.R. at 57. Then, on September 9, 2010, the trial court filed its opinion pursuant to Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following three issues for our review.

I. Is Appellant Coann Elaine Miller an indispensable party under the laws and regulations of the Commonwealth?

II. Did the court make an error of law in insisting that res judicata related to Judge France's above-mentioned ruling held sway, despite the degree of manifest injustice presented to the court both at the March 10, 2010 hearing, and in [Appellant]'s proposed Answer, filed with her Petition to Intervene September 29, 2009?

III. Whether the court made an error of law that, res judicata/collateral estoppel or not, the aforementioned presentation of manifest injustice did not warrant a de novo consideration of [Appellant]'s rights regarding the property in question?

Appellant's Brief at 3.

Although Appellant presents three issues, the only legal question before us is whether the trial court erred in denying Appellant's petition to intervene. In general, Appellant contends that she is an indispensable party to the underlying foreclosure action and that denying her petition to intervene in this matter constitutes a manifest injustice. *Id.* at 12. Specifically, Appellant argues that the trial court erred in using the doctrine of *res judicata* to deny her petition to intervene. *Id.* at 14. According to Appellant, in light of the fraud and standing issues interfering with her property rights, "[t]he level of manifest injustice in this case warrants a recon-

sideration of the facts de novo." *Id.* at 12, 18–20.

■ Before addressing the merits of Appellant's argument, we first must determine whether the appeal from the March 10, 2010 order denying Appellant's petition to intervene is properly before this Court. Generally, an appellate court only has jurisdiction to review final orders. *See* Pa.R.A.P. 341 (providing that "an appeal may be taken as of right from any final order"). As the official note to Pa.R.A.P. 341 explains, "an order denying a party the right to intervene" is no longer considered an appealable final order but, in appropriate cases, **may** "fall under [Pa.R.A.P.] 312 (Interlocutory Appeals by Permission) or [Pa.R.A.P.] 313 (Collateral Orders)[.]" *Id.,* note (emphasis added). The record reflects that Appellant did not seek permission to appeal from the March 10, 2010 order. Hence, this appeal must be quashed unless the order may be defined as a collateral order pursuant to Pa.R.A.P. 313. *See Commonwealth v. Kennedy,* 583 Pa. 208, 876 A.2d 939, 943 (2005) (stating that "[w]hether an order is appealable as a collateral order under Rule 313 is an issue of [an appellate court's] jurisdiction to entertain an appeal").

■ Promulgated in 1992, Pa.R.A.P. 313 codified the collateral order doctrine. Rule 313 provides, as follows, in pertinent part.

(a) **General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

(b) **Definition.** A collateral order is [1] an order separable from and collateral to the main cause of action [2] where the right involved is too important to be denied review and [3] the question presented is such that if review is post-

**1142**

poned until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313. In defining a collateral order, Pa.R.A.P. 313(b) sets forth a three-part test, and "[t]o benefit from the collateral order doctrine, an order must satisfy all three elements." *Radakovich v. Radakovich*, 846 A.2d 709, 714 (Pa.Super.2004), *quoting Nemirovsky v. Nemirovsky*, 776 A.2d 988, 991 (Pa.Super.2001). According to our Supreme Court, if "an order satisfies Rule 313's three-pronged test," then an appellate court "may exercise appellate jurisdiction where the order is not final." *Rae v. Pennsylvania Funeral Directors Ass'n*, 602 Pa. 65, 977 A.2d 1121, 1125 (2009). "To buttress the final order rule," however, "the collateral order doctrine is to be construed narrowly, and [ . . . ] every one of its three prongs [must] be clearly present before collateral appellate review is allowed." *Id.* at 1126. "In adopting a narrow construction, [our Supreme Court] endeavor[ed] to avoid piecemeal determinations and the consequent protection of litigation." *Id.* at 1129 (internal quotation and citation omitted). Moreover, "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." *Id.* at 1130.

Case law has clarified how appellate courts should apply the three-part analysis under the collateral order doctrine. For the first prong of the analysis under Pa.R.A.P. 313(b), a court must determine whether the issue(s) raised in the order "are separable from the central issue" of the ongoing litigation. *In re J.S.*, 980 A.2d 117, 121 (Pa.Super.2009). Under the second prong, in order to be considered too important to be denied review, the issue presented "must involve rights deeply rooted in public policy going beyond the particular litigation at hand."

*Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1214 (1999). "[A]n issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by the final judgment rule." *Id.* at 1213, *quoting In re Ford Motor Company*, 110 F.3d 954, 959 (3d Cir.1997). Furthermore, with regard to the third prong of the analysis, our Supreme Court explained that "whether a right is 'adequately vindicable' or 'effectively reviewable,' simply cannot be answered without a judgment about the value interests that would be lost through rigorous application of a final judgment requirement." *Geniviva, supra* at 1213, *quoting Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878–879, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994).

In the case *sub judice*, we observe that the March 10, 2010 order denying Appellant's petition to intervene satisfies the first prong of the analysis under Pa.R.A.P. 313(b). Appellant's right to intervene in the foreclosure action between MERS and Malehorn is peripheral to the ultimate resolution of the property rights at issue. Hence, the March 10, 2010 order presents an issue that is separable from the central issue raised in the foreclosure action. *See In re J.S., supra* at 121.

Next, we recognize that the order denying Appellant's petition to intervene directly affects "rights deeply rooted in public policy going beyond the particular litigation at hand." *See Geniviva, supra* at 1214. Ascertaining Appellant's right to the property at issue is an important right that ordinarily should not be denied review. *See Nemirovsky, supra* at 991 (noting that "[i]t is beyond peradventure that the right involved-the right to property-is deeply rooted in public policy"). As a result, the March 10, 2010 order satisfies

the second prong of the collateral order doctrine set forth in Pa.R.A.P. 313(b).

After careful consideration, however, we conclude that the March 10, 2010 order fails to satisfy the third prong of the collateral order doctrine. Thus, it is not an appealable order under Pa.R.A.P. 313(b). As the procedural history indicates, Appellant's interests would not suffer from a "rigorous application of [the] final judgment requirement." *Geniviva, supra* at 1213 (internal quotation and citation omitted). Consequently, if we elect to postpone our review until final judgment is entered in this case, we discern no basis upon which to conclude that Appellant's claim will be irreparably lost. *See* Pa. R.A.P. 313(b). Rather, the record reveals that Appellant has sought to protect her property rights by pursuing other forms of litigation. In its recitation of the relevant procedural history, the trial court detailed Appellant's alternative efforts to protect her rights. On December 7, 2007, Appellant filed an adversary proceeding in the United States Bankruptcy Court for the Middle District of Pennsylvania where she raised the same question at issue in her intervener petition, an ownership interest in the pertinent property. *See* Trial Court Opinion, 9/9/10, at 4, 7. At the allowance of the Bankruptcy Court, Appellant also sought relief with the Middle Paxton Township Zoning Hearing Board. *Id.* at 4. The Zoning Board denied Appellant's request for a variance on December 28, 2008, and the Bankruptcy Court dismissed her action on April 1, 2009. *Id.* While Appellant failed to appeal the Zoning Board's decision, she filed a motion for relief with the Bankruptcy Court. *Id.* Appellant filed an appeal when the Bankruptcy Court denied her motion on August 19, 2009; however, her appeal was subsequently dismissed for failure to file required briefs. *Id.* Furthermore, as the trial court emphasized, Appellant has an ongoing action in the Bankruptcy Court which she re-filed on December 27, 2009. *Id.* at 5.

As this procedural history demonstrates, Appellant now seeks to intervene in this foreclosure action and to relitigate an issue which has been previously resolved by other tribunals. While we appreciate that property rights are deeply rooted in public policy, Appellant has already pursued other forms of litigation in order to protect her rights. In fact, as the trial court notes, Appellant was continuing to actively pursue a remedy in the Bankruptcy Court at the time of this appeal. In its well reasoned opinion, the trial court explains that the merits of Appellant's claim "are in fact barred by the doctrine of *res judicata* [.]" Trial Court Opinion, 9/9/10, at 6 (finding Appellant's attempt to intervene in the current foreclosure action satisfies all four factors of the doctrine of *res judicata*). Specifically, the trial court reasoned as follows.

> The Bankruptcy Judge heard [Appellant's] issue, and resolved it against [her], finding the issue to be moot because the [Appellant] herself lacks standing to assert an ownership interest in the property, due to the fact that she never appealed the Zoning Hearing Board's decision to withhold a variance on the subdivision of the Property. [ . . . ] Therefore, [the trial court] find[s] it clear that [Appellant] seeks to relitigate the same issues that have already been resolved in the prior Adversary Proceeding.
>
> . . .
>
> It would be inequitable to allow the [Appellant] to re-litigate a claim that has already been addressed, especially when [Appellant] had the opportunity to appeal any decisions made by previous ad-

ministrative bodies, and clearly failed to do so.

*Id.* at 7–9. Because Appellant has availed herself of the opportunity to fully litigate the issue of her property rights in other forums, we determine that Appellant's claim cannot become "irreparably lost" as the third prong of Pa.R.A.P. 313(b) requires. Thus, as we strive to find the proper balance between avoiding the pitfalls of piecemeal litigation and protecting property rights, we reason that a delay in reviewing Appellant's claim presents no risk of danger. *See Rae, supra* at 1129.

Therefore, upon our careful review of the record, we conclude the March 10, 2010 order denying Appellant's petition to intervene fails to satisfy Pa.R.A.P. 313. As a result, the lack of an appealable order divests this Court of jurisdiction to consider the current appeal. Accordingly, this appeal is quashed.

Appeal quashed. Jurisdiction relinquished.