J-A01034-21

2021 PA Super 127

DAVID V. BOGDAN, ADMINISTRATOR : IN THE SUPERIOR COURT OF
OF THE ESTATE OF LUKE ELLINGTON, : PENNSYLVANIA
DECEASED :
:
:
v. :
:
:
AMERICAN LEGION POST 153 HOME :
ASSOCIATION D/B/A, A/K/A GEORGE :
H. IMHOF POST NO. 153 OF THE :
AMERICAN LEGION OF THE STATE OF :
PENNSYLVANIA D/B/A, A/K/A CLUB :
153 D/B/A, A/K/A POST 153, GEORGE :
H. IMHOF POST 153 OF THE :
AMERICAN LEGION, STATE OF PA, :
LLC., AMERICAN LEGION :
DEPARTMENT OF PENNSYLVANIA, :
INC., AND THE AMERICAN LEGION :
:
APPEAL OF: U.S. UNDERWRITERS :
INSURANCE COMPANY : No. 774 EDA 2020

Appeal from the Order Entered February 3, 2020
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 171102643

BEFORE: BENDER, P.J.E., OLSON, J. and STRASSBURGER, J.*

OPINION BY BENDER, P.J.E.: **FILED JUNE 23, 2021**

U.S. Underwriters Insurance Company (Underwriters) appeals from the

February 3, 2020 order, which denied Underwriters' petition to intervene in

the civil action filed by David V. Bogdan, Administrator of the Estate of Luke

Ellington, Deceased (Plaintiff) against American Legion Post 153 Home

Association d/b/a, a/k/a George H. Imhof Post No. 153 of the American

Legion of the State of Pennsylvania d/b/a, a/k/a Club 153 d/b/a, a/k/a Post

153, George H. Imhof Post 153 of The American Legion, State Of PA, LLC.

*Retired Senior Judge assigned to the Superior Court.

J-A01034-21

(Post 153); American Legion Department of Pennsylvania, Inc. (American Legion PA); and the American Legion (collectively, Defendants).[1] Upon review, we reverse and remand.

By way of background, Plaintiff commenced this suit against Defendants on November 28, 2017, based on the July 30, 2016 fatal shooting of Luke Ellington by Sovranna Sem in the parking lot outside Post 153. Relevant to Post 153, Plaintiff set forth claims under the Wrongful Death Act, 42 Pa.C.S. § 8301, Survival Act, 42 Pa.C.S. § 8302, and Dram Shop Act, 47 Pa.C.S. § 4-493(1), for negligence, negligent security, and punitive damages. Underwriters is the liquor liability insurance carrier for Post 153. Underwriters has provided Post 153 a legal defense in this suit subject to a reservation of rights to deny coverage for indemnification of damages pursuant to the liquor liability insurance policy's Absolute Firearms Exclusion and the Punitive or Exemplary Damages Exclusion.[2] Underwriters

---

[1] Of the parties to the underlying action, only Plaintiff and American Legion PA have filed briefs in this Court.

[2] These provisions provide as follows:

> This insurance does not apply to "injury", including cost of defense, for any claim or "suit" arising or resulting from directly, or indirectly, the use of firearms of any kind.
>
> This exclusion applies to any "injury", claim or "suit" regardless of whether the use of firearms is a direct cause, a contributing cause or a concurrent cause of any loss.

*(Footnote Continued Next Page)*

- 2 -

has filed a separate declaratory judgment action against Post 153 to resolve the coverage issues. *See* Underwriters' Brief at 6 n.1.

According to the complaint, Sem was visibly intoxicated when he entered Post 153. Despite this, Post 153's employees served Sem alcohol. While inside Post 153, Sem approached Ellington and began punching him in the face. Once the altercation ended, Sem and Ellington were escorted outside together. Once outside, Sem shot Ellington multiple times in the chest. Ellington died from the gunshot wounds. *See* Second Amended Complaint, 3/26/18, at ¶¶ 37–55.

Plaintiff twice amended his complaint in response to preliminary objections. American Legion PA filed preliminary objections in response to Plaintiff's second amended complaint, which were sustained in part and overruled in part. Order, 6/5/18. American Legion and American Legion PA

*(Footnote Continued)* —————————

Petition to Intervene, 8/29/19, at 2-3 (quoting Policy No. CL 3569672A, Absolute Firearms Exclusion).

> Regardless of any other provisions of this policy, this policy does not apply to punitive or exemplary damages.
>
> If a "suit" is brought against any insured, and falls within the coverage provided by the policy, seeking both compensatory damages (damages for economic loss and pain and suffering) and punitive or exemplary damages (damages as a means of punishment), no coverage shall be provided by this policy for any costs, interest, defense costs, attorney or legal fees of any type or damages attributable to punitive or exemplary damages.

Petition to Intervene, 8/29/19, at 3 (quoting Policy No. CL 3569672A, Punitive or Exemplary Damages Exclusion).

filed answers and new matters to the second amended complaint on July 23, 2018 and August 6, 2018, respectively. Plaintiff filed replies. American Legion filed a joinder complaint against Sem, and Defendants filed cross-claims against Sem. On July 19, 2019, the trial court issued a revised case management order, stating that discovery should be completed by November 4, 2019, and the case should be ready for trial by March 2, 2020.

On August 29, 2019, Underwriters sought to intervene for the purpose of securing a special jury verdict form and answers to interrogatories to allow a clear determination of the basis for the jury's verdict, in order to assist with subsequent coverage determinations regarding indemnification in the declaratory judgment action. Petition to Intervene, 8/29/19, at 2. According to Underwriters, a "general jury verdict will not allow" Underwriters "to determine whether insurance coverage is available for indemnification of Post 153." *Id.* at 4. Underwriters explained that some counts are not covered by the liquor liability policy, and a finding of liability under the Survival or Dram Shop Acts would not determine or differentiate between the damages recoverable for the pre-shooting injuries as compared to those resulting from the fatal shooting, which are removed under the Absolute Firearms Exclusion. *Id.* According to Underwriters, "[a] verdict slip which differentiates between the different [c]ounts and damage components is necessary to allow the parties to determine whether indemnification coverage is available for a verdict and the extent of

indemnification." *Id.* at 5. Because Underwriters only sought to intervene in relation to the verdict slip, and the underlying action was still in the discovery stage, Underwriters argued that it had "not unduly delayed its request" and "intervention will not unduly delay, embarrass or prejudice the proceedings or the rights of the parties." *Id.* at 6.

Plaintiff and American Legion PA objected to Underwriters' petition to intervene. On November 4, 2019, the trial court issued a revised case management order, stating that discovery shall be completed by February 3, 2020, and the case should be ready for trial by June 1, 2020. On February 3, 2020, the trial court denied Underwriters' petition to intervene.

Underwriters filed the instant notice of appeal on February 17, 2020. The trial court ordered Underwriters to file a concise statement of errors pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), which it did. The trial court filed a Rule 1925(a) opinion. On appeal, Underwriters presents the following questions for our review:

1. Whether the trial court abused its discretion when it misapplied the law pursuant to ***Butterfield v. Guintoli***, 670 A.2d 646, 658 (Pa. Super. 1995), which recognizes Underwriters' right to intervention for the purpose of securing a record that will identify whether the jury's verdict is based on a claim within the insuring agreement?

2. Whether the trial court abused its discretion when it disallowed a petition to intervene on the grounds that Underwriters purportedly delayed in making its application pursuant to Pa.R.C.P. 2329(3) where Underwriters' sole proposed involvement in the case would be at the time of trial[,] which was yet to have been scheduled?

3. Whether the trial court abused its discretion when it disallowed a petition to intervene on the grounds that Underwriters has unduly delayed in making application pursuant to Pa.R.C.P. 2329(3), without first holding a hearing where factual matters may be established and objections raised?

Underwriters' Brief at 2.

Preliminarily, we must determine whether this appeal is properly before us. "In order for this Court to have jurisdiction, an appeal must be from an appealable order." **Commonwealth v. Mitchell**, 72 A.3d 715, 717 (Pa. Super. 2013) (citation omitted). "The Pennsylvania Rules of Appellate Procedure (Pa.R.A.P.) delineate appealable orders as final orders (Pa.R.A.P. 341); interlocutory orders as of right (Pa.R.A.P. 311); interlocutory orders by permission (Pa.R.A.P. 312); and collateral orders (Pa.R.A.P. 313)." **Id.** (citation omitted). Here, Underwriters appeals from the order denying its petition to intervene pursuant to Rule 313(b). Underwriters' Brief at 1.

> Otherwise known as the collateral order doctrine, Rule 313(b) provides that an interlocutory order is collateral and, therefore, immediately appealable, if it is: "[1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b); **see also Commonwealth v. Wright**, … 78 A.3d 1070, 1077 ([Pa.] 2013).

**K.C. v. L.A.**, 128 A.3d 774, 777 (Pa. 2015) (some brackets added).

> Case law has clarified how appellate courts should apply the three-part analysis under the collateral order doctrine. For the first prong of the analysis under Pa.R.A.P. 313(b), a court must determine whether the issue(s) raised in the order are separable from the central issue of the ongoing litigation. Under the

- 6 -

second prong, in order to be considered too important to be denied review, the issue presented must involve rights deeply rooted in public policy going beyond the particular litigation at hand. An issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by the final judgment rule. Furthermore, with regard to the third prong of the analysis, our Supreme Court explained that whether a right is adequately vindicable or effectively reviewable, simply cannot be answered without a judgment about the value interests that would be lost through rigorous application of a final judgment requirement.

***Mortg. Elec. Registration Sys., Inc. v. Malehorn***, 16 A.3d 1138, 1142 (Pa. Super. 2011) (citations, quotation marks, and brackets in original omitted).

At oral argument, Underwriters directed this Court to two cases in support of its position that this appeal was proper under the collateral order doctrine. First, in ***Township of Radnor v. Radnor Recreational, LLC***, 859 A.2d 1 (Pa. Cmwlth. 2004), our sister court concluded the appeal was proper under the collateral order doctrine because the right of intervention was separable from and collateral to the underlying action and the property interests therein were too important to be denied review. Second, in ***In re Barnes Foundation***, 871 A.2d 792 (Pa. 2005), our Supreme Court held that although "Pennsylvania law does allow for an appeal as of right from an order denying intervention in circumstances that meet the requirements of the collateral order doctrine[,]" an appeal from an order denying a petition to intervene must be appealed within 30 days, and the appellant's "failure to

attain intervenor status before the orphans' court foreclosed his ability to file a cognizable appeal relative to the court's final decree." *Id.* at 794–95.

On the other hand, American Legion PA and Plaintiff argue that this appeal is not properly before us because the issues Underwriters seeks to raise in special interrogatories in the underlying action should instead be resolved in the declaratory judgment action. *See* American Legion PA's Brief at 7–8 (arguing the appeal is not proper because Underwriters can obtain relief through its declaratory judgment action and that Underwriters' "apparent purpose here is to pursue nothing more than a thinly disguised declaratory judgment action styled as a Petition to Intervene"); Plaintiff's Brief at 5 ("It is obvious from the face of the declaratory judgment action and applicable law that [Underwriters] can obtain the requested relief (a determination of the extent of coverage) through the declaratory judgment action.").

In the case *sub judice*, Underwriters filed the instant notice of appeal within 30 days of the order denying its petition to intervene. We observe that the February 3, 2020 order denying Underwriters' petition to intervene satisfies the separability prong under Rule 313(b) because Underwriters' right to intervene is peripheral to the ultimate resolution of the underlying action. Furthermore, the declaratory judgment action will not resolve the same issues as Underwriters' petition to intervene. The declaratory judgment action will resolve coverage issues and whether the policy applies

to the verdict. *See Nationwide Mut. Ins. Co. v. Arnold*, 214 A.3d 688, 695 (Pa. Super. 2019) (quoting *Erie Ins. Exchange v. Muff*, 851 A.2d 919, 925 (Pa. Super. 2004) ("This Court has previously stated that 'the interpretation of an insurance policy is a matter of law properly resolved in a declaratory judgment action.'")). The petition to intervene in the underlying action, on the other hand, is the only way for Underwriters to secure the reasons for the verdict in order to sustain its burden of establishing whether any exclusions apply in the declaratory judgment action. *See Butterfield,* 670 A.2d at 655–58 (granting summary judgment in favor of the insured because it was impossible to determine the basis of the jury's findings of punitive damages without special interrogatories, it was the insurer's burden to prove that the claim was excluded from coverage, and the insurer failed to take the opportunity to request specific interrogatories or special verdict forms, or a petition to intervene, and therefore failed to prove the claim was excluded under its policy). Based on the foregoing, we conclude that Underwriters has satisfied the three prongs of the collateral order doctrine and the appeal is properly before us. *See Mortg. Elec. Registration Sys., Inc.*, 16 A.3d at 1142.

Now, we turn to Underwriters' issues on appeal, all of which challenge the trial court's denial of Underwriters' petition to intervene. "It is well established that a question of intervention is a matter within the sound discretion of the court below and unless there is a manifest abuse of such

discretion, its exercise will not be interfered with on review." ***Wilson v. State Farm Mut. Auto. Ins. Co.***, 517 A.2d 944, 947 (Pa. 1986) (citations and quotation marks omitted).

> In ruling on a petition to intervene, the trial court is required to determine whether "the allegations of the petition have been established" and, assuming that they have, whether they demonstrate an interest sufficient to justify intervention. ***Marion Power Shovel Co., Division of Dresser Industries, Inc. v. Fort Pitt Steel Casting Co., Division of Conval–Penn, Inc.***, … 426 A.2d 696 ([Pa. Super.] 1981). The determination of who may intervene in an action and when that intervention may be prohibited is determined by Pa.R.C.P. 2327 and 2329.

***Nemirovsky v. Nemirovsky***, 776 A.2d 988, 992 (Pa. Super. 2001). Rule 2327 provides in pertinent part:

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> > (1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered[.]

Pa.R.C.P. 2327(1). Rule 2329 provides:

> Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if
>
> > (1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or
> >
> > (2) the interest of the petitioner is already adequately represented; or

(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

Pa.R.C.P. 2329.

Here, the trial court denied Underwriters' petition to intervene based upon Rule 2329(3), undue delay. According to the trial court, it

> properly denied [Underwriters'] Petition to Intervene because [Underwriters] unduly delayed in acting. Plaintiff commenced the underlying lawsuit on November 28, 2017, by filing a Complaint that named [Underwriters'] insured as a [d]efendant. Without explanation, [Underwriters] filed its Petition on August [2]9, 2019, *i.e.*, nearly two years later. … [Underwriters] wasted two years in which it could have been a party and pursued a litigation strategy to ensure that its interests were protected. It follows, and this court finds, that [Underwriters'] belated effort to require the jury to decide the coverage question would prompt confusion and unduly prejudice the conduct of the trial.
>
> Because [Underwriters] unduly delayed in filing its Petition to Intervene, this [c]ourt properly dismissed that Petition under Pa.R.C.P. 2329(3).

Trial Court Opinion, 7/8/20, at 6–7 (citations omitted).

In denying Underwriters' petition, we conclude that the trial court manifestly abused its discretion. First, Underwriters does not have a litigation strategy to pursue. Underwriters' sole purpose for intervening is to request special interrogatories related to the jury's verdict. Because Underwriters had no reason to be involved until special interrogatories in relation to the verdict could be submitted, Underwriters could not have "wasted two years" as the parties still had not finished the discovery stage

at the time Underwriters filed its petition to intervene. Thus, the trial court erred in concluding that Underwriters unduly delayed by failing to petition to intervene earlier as there was simply no reason for Underwriters to do so. Second, the trial court erred in denying Underwriters' petition to intervene based on an assumption that the intervention and interrogatories would cause confusion. Potential confusion does not prevent Underwriters from being able to intervene and is instead something that can be addressed at the time the interrogatories are proposed. Accordingly, we reverse the order denying Underwriters' petition to intervene and remand for further proceedings in accordance with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2021