J-A27025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL TSCHILIN A/K/A MICHAEL CHILIN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JULIETT BARZILAYEV  APPEAL OF OTAR KOSASHVILI | : | No. 737 EDA 2021 |

Appeal from the Order Entered March 10, 2021
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  February Term 2015 No. 8451

BEFORE:  PANELLA, P.J., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:　　　　　**FILED JANUARY 20, 2022**

Otar Kosashvili (Appellant) appeals from the March 10, 2021, order entered in the Philadelphia Court of Common Pleas, denying his petition to intervene in the divorce between Michael Tschilin ("Husband") and Juliett Barzilayev ("Wife").  The matter concerns the ability of a third party to intervene in a divorce action with respect to litigating marital estate interests. Appellant contends the trial court abused its discretion in determining Husband and Wife had not engaged in inequitable or fraudulent behavior by failing to sign an agreement resolving Appellant's claims for intervening and the court erred in failing to hold a hearing on the averments set forth in his petition.  After careful review, we conclude that the order from which Appellant appeals is interlocutory and not otherwise appealable. Accordingly, we quash this appeal.

Husband initiated the underlying divorce and equitable distribution action in 2015. ***See*** Trial Ct. Op., 7/1/2021, at 1. In June of 2015, Wife was "enjoined and restrained from encumbering, dissipating, selling or otherwise alienating any and all marital assets of the parties[.]" ***Id.*** At issue in this case is a parcel of real property ("the Property") located at 1804 Bainbridge Street, Philadelphia, Pennsylvania. Wife purchased the Property in 2007 with a third party, Yevgeniy Tsvik.[1] ***See id.*** at 1-2. "Wife did not oppose the divorce, but sought economic relief." ***Id.*** at 1. On November 28, 2016, grounds for divorce under 23 Pa.C.S. § 3301(D) were approved. ***See id.***

The matter proceeded to a hearing before a permanent arbitrator in divorce on December 21, 2017. ***See id.*** at 2. Husband filed a motion for special relief requesting compulsory joinder of Tsvik and Brighton.[2] ***See id.*** A master was appointed to assist in the disposition of the three marital properties, include the Property. ***See id.*** By order dated August 28, 2018, the Property "was to be listed for sale with a licensed realtor and the net proceeds were to be placed in an escrow account." ***Id.***

In July 2019, four years after the divorce action began, Appellant filed the instant petition to intervene. In his petition, Appellant averred that "he

---

[1] The lender was Brighton Beach and Sun Production, Inc ("Brighton"). ***See*** Purchase Money Mortgage, 4/28/2015.

[2] The court issued an order, joining Tsvik and Brighton as additional parties. ***See*** Order, 8/24/2017.

had obtained a restitution order dated June 13, 2012 from Montgomery County that had been converted into a formal judgment against Wife alone on May 6, 2019 in the amount of $154,876.03[.]" *Id.* at 3 (some capitalization omitted). Based on the judgment, Appellant states "he had an equitable interest in marital property owned by Husband and Wife." *Id.* Appellant noted Wife owns the Property, which was under agreement of sale, and the closing was scheduled for July 11, 2019. *See id.* Appellant "sought to intervene in Husband and Wife's divorce action to protect his alleged equitable interest" in the Property, and requested all proceeds from the sale be placed into escrow pending distribution to him. *See id.*

By order dated July 10, 2019, the net proceeds from the Property, after satisfaction of the first mortgage, were to be placed in escrow. Moreover, "the 2015 purchase money mortgage and the May 6, 2019, judgment against Wife were set aside until further hearing." *Id.* at 2. Subsequently, a hold was placed on Wife's proceeds from the Property until Appellant's petition to intervene could be heard.

The court held a hearing on the petition on October 21, 2020. No evidence or testimony was submitted on behalf of Appellant. *Id.* at 3. "Attorneys stated on the record that there was no transfer/sale of [the] Property, and that Husband's name was not on the deed for" the Property. *Id.* at 3. It was also noted that Tsvik paid Husband $36,000 for his equitable portion of the Property. *See id.*

- 3 -

Furthermore, at the hearing, Appellant asserted that he initially sought to prevent Wife from distributing the proceeds of the sale of the Property without paying the judgment, but that he now took issue with two agreements Wife previously entered into as part of the divorce: (1) a Property Settlement Agreement ("PSA"), dated February 27, 2020, in which Husband agreed to relinquish his rights, title, and interest, if any, to the Property in exchange for the buyout of his interest in the Property as part of the equitable distribution of the marital real property; and (2) a Settlement Agreement and Mutual Release for Real Estate Property ("SAMR"), also dated February 27th, stating that Tsvik owned 50% of the Property and Husband and Wife each owned 25%, and that Tsvik would purchase Husband's 25% ownership for $36,000.[3]

Appellant argued that the SAMR should only reflect a transfer of Husband's equitable interest in the Property, as Husband was never a record owner. *See* N.T., 10/21/2020, at 12. As will be discussed below, Appellant misunderstood the distinction between when an individual possesses equitable interest in martial property versus when that individual possesses title to real estate. After an off-the-record negotiation, Appellant stated in open court that the parties agreed to amend the SAMR to reflect that Husband sold only his equitable interest. *See id.* at 25. The court understood the agreed upon change to be "that the $36,000 would pay for [Husband's] equitable

---

[3] In other words, Tsvik would now own 75% of the Property, Wife would own 25%, and Husband would own 0%.

distribution" and that the portion of the SAMR stating Tsvik owns 75% of the Property "would apparently be changed to indicate that there was an equitable distribution interest that was transferred from [Husband] to Mr. Tsvik." **Id.** at 28. The court stated it would allow the parties 30 days to amend the SAMR, and the parties agreed. **Id.** at 17, 27, 29-31. "After the hearing, and by agreement of all the parties including [Appellant], a continuance was granted for submission of a global settlement." Trial Ct. Op. at 2. "The trial court further stated on the record and in the trial court order that if no resolution to the matter was received within thirty (30), days the underlying petition to intervene shall be dismissed." **Id.** (some capitalization omitted). No party objected at trial or to the court's October 21, 2020, order.

Appellant thereafter drafted an addendum to the SAMR which Wife and Tsvik refused to sign. Appellant filed a petition for sanctions, and the court held a hearing on March 10, 2021. At the hearing, Appellant stated that in addition to clarifying that Tsvik had paid Appellant $36,000 for his equitable interest in the property, Appellant had included a line in the addendum stating that Husband "never had any legal interest in the property." N.T., 3/10/2021, at 32. Tsvik, through his counsel, refused to sign the addendum because it no longer reflected his purchase an additional 25% ownership interest in the property and ownership 75% of the Property. **See id.** at 36. Wife's counsel stated she would not sign the Addendum unless Tsvik agreed to it. **See id.**

The court found that the conveyance of a 25% interest reflected in the SAMR was not fraudulent on its face, and that there had been no inequitable behavior by the parties in refusing to sign Appellant's addendum. *Id.* at 59-61. The court then dismissed both petitions. This timely appeal followed.

The issues Appellant asks us to consider are as follows:

1. Is the instant appeal appealable as a Collateral Order, pursuant to Pennsylvania Rule of Appellate Procedure 313, when Appellant's Petition to Intervene is separable from the underlying divorce decree, this appeal concerns determination of ownership of property, and when Appellant's rights will be irreparably lost if review is postponed until the Trial Court enters a final divorce decree?

[2.] Did the Trial Court manifestly abuse its discretion by denying Appellant's Petition where: (1) Appellant has a legally enforceable interest in the Property; (2) Appellant filed his Petition in compliance with Pa.R.C.P. 2328; (3) Appellant's Petition satisfied the requirements of Pa. R.C.P. 2327(4), while under that Rule the Trial Court was required to allow Appellant to intervene in the Underlying Action unless an exception applied; and where (4) Appellant's petition did not fall within any of the exceptions to Pa.R.C.P. 2327?

[3.] Did the Trial Court abuse its discretion by: (1) determining there was no presentation of inequitable or fraudulent behavior on the part of [Husband], [Wife], or Tsvik where the SAMR Agreement fraudulently used the conveyance of [Husband]'s equitable interest to illegally convey half of [Wife]'s legal interest in the Property to Tsvik; and by (2) entering its Order of March 10, 2021 without holding a hearing on the averments of Appellant's Petition?

[4.] Did the Trial Court [abuse] its discretion where it [p]ermitted [Husband] to [t]ransfer legal ownership of the Property to Tsvik, despite the fact that [Husband] has only ever had an equitable interest in the Property?

Appellant's Brief at 3-5. No other parties have submitted briefs.

As a preliminary matter, we address Appellant's first issue — the appealability of the order denying Appellant's petition to intervene.[4]

> In order for this Court to have jurisdiction, an appeal must be from an appealable order. The Pennsylvania Rules of Appellate Procedure (Pa.R.A.P.) delineate appealable orders as final orders (Pa.R.A.P. 341); interlocutory orders as of right (Pa.R.A.P. 311); interlocutory orders by permission (Pa.R.A.P. 312); and collateral orders (Pa.R.A.P. 313).

*Bogdan v. Am. Legion Post 153 Home Ass'n*, 257 A.3d 751, 755 (Pa. Super. 2021) (citations and quotations marks omitted).

Here, Appellant acknowledges that a final order has not been entered in the parties' divorce and the March 10, 2021, order is not otherwise final or appealable as of right. *See* Appellant's Brief at 29-30. Nevertheless, he argues the order is a collateral order under Rule 313, and therefore, appealable. *See id.*

"Whether an order is appealable as a collateral order is a question of law; as such, our standard of review is *de novo* and our scope of review is plenary." *Ashdale v. Guidi Homes, Inc.*, 248 A.3d 521, 524 (Pa. Super. 2021) (citation and quotation marks omitted). "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is

_____

[4] On May 6, 2021, this Court issued a rule to show cause as to how the order met the elements of the collateral order doctrine. Appellant filed a timely response on May 13, 2021. This Court subsequently issued an order discharging the rule to show cause and referred the matter to this panel. *See* Order, 5/14/2021.

such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

In this case, the order at issue (denying petition to intervene because the conveyance of a 25% interest, reflected in the SAMR, was not fraudulent on its face, and that the other parties did not engage in inequitable behavior by refusing to sign Appellant's addendum) is separate from and collateral to Husband and Wife's divorce action and equitable distribution dispute. Moreover, we agree Appellant's right to enforce the restitution judgment against Wife is too important to be denied review.

Nevertheless, we disagree with Appellant that the claim would be irreparably lost if review is postponed until final judgment. As the trial court noted, "there is only one person who owes this $154,000 debt, and that's [Wife]." N.T., 3/10/2021, at 41. The court further explained the limitations of third parties intervening in a divorce:

> If husband [owns] the property is in his name alone, but wife has an equitable interest in the property, which happens all the time, and husband tries to sell the property, wife can intervene. That's fine.
>
> Can a third party intervene? Well, if it's a mortgage on the property, yes, it can. Can someone who owns a moving company? No. Can they put a lien against it? No. Can they interfere with that sale? No. They can put a lien on the amount. **They can make sure they execute on the judgment.**
>
> **They can do all kinds of stuff, but they [cannot] intervene in the divorce.**

*Id.* at 50 (emphasis added).

Contrary to Appellant's argument, the central issue is not the actual sale of the Property but the percentage distribution of the net proceeds from the sale received by Wife and Tsvik. Following the sale, Wife will still receive a portion of those proceeds. Moreover, it merits mention that the proceeds were ordered to be held in escrow as opposed to being distributed immediately to Wife and Tsvik. Appellant could then seek to set aside Wife's portion of the proceeds to enforce the judgment against her, albeit for a smaller amount. As such, his right to collect on the restitution judgment would not be irreparably lost if review is postponed until final judgment in the divorce action. Accordingly, the March 10, 2021, order is not an appealable collateral order, and therefore, we are compelled to quash this appeal.

In any event, even if the March 10th order was properly before us, we would find that Appellant's claims have no merit. In his brief, Appellant argues his claim for intervention satisfied the requirements of Pa.R.C.P. 2327(4).[5] **See** Appellant's Brief at 37. Appellant claims he has a legally enforceable interest in the Property, as his judgment against Wife constituted a lien on the real property under 42 Pa.C.S.A. § 4303.[6] **See** Appellant's Brief at 39. Appellant also asserts the court may not refuse intervention for any of the

---

[5] **See Acorn Development Corp. v. Zoning Hearing Bd. Of Upper Merion Township**, 523 A.2d 436 (Pa. Commw. 1987).

[6] **See In Re Upset Sale**, 479 A.2d 940, 943 (Pa. 1984).

three exceptions listed in Pa.R.C.P. 2329. *See* Appellant's Brief at 40-45. Appellant specifically states his petition "did not fall within Rule 2329(1) because the claims averred by Appellant in his petition were in subordination to and in recognition of the propriety of the underlying action." *Id.* at 43 (quotation marks and some capitalization omitted). He also avers his petition "did not fall within Rule 2329(2) because his interest was not … represented [by] any of the parties and that by entering into the SAMR, the parties sought to diminish his interest in the Property by reducing Wife's interest. *Id.* at 44. As for the third exception, he states his petition "did not fall within Rule 2329(3) because [he] filed his petition timely." *Id.* at 45 (some capitalization omitted).

Appellant also claims the SAMR was fraudulent. *See id.* at 47. Because Husband had never been a real owner of the Property and his name on neither the deed nor the mortgage, Appellant contends Husband was not able to legally convey 25% of the property to Tsvik. *See id.* at 49-50. According to Appellant, he provided the court with evidence that the other parties acted inequitably in refusing to sign the Addendum to the SAMR, including e-mails between the parties reflecting Appellant's attempt to resolve issues, and the other parties' refusal to cooperate. *Id.* at 52-56. Appellant concludes that pursuant to Rule 2329 and applicable case law, the court erred in failing to hold a hearing on his petition before entering its March 10, 2021, order. Appellant's Brief at 56.

Turning to the merits of the appeals, it is well established that a question of intervention is a matter within the sound discretion of the trial court and unless there is a manifest abuse of such discretion, its exercise will not be interfered with on review. In ruling on a petition to intervene, the trial court is required to determine whether the allegations of the petition have been established and, assuming that they have, whether they demonstrate an interest sufficient to justify intervention. The determination of who may intervene in an action and when that intervention may be prohibited is determined by Pa.R.C.P. 2327 and 2329.

***Nemirovsky v. Nemirovsky***, 776 A.2d 988, 991-92 (Pa. Super. 2001)

(citations and quotations marks omitted). ***See also Bogdan v. Am. Legion***

***Post 153 Home Ass'n***, 257 A.3d 751, 757 (Pa. Super. 2021).

Rule 2327 provides, in relevant part:

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

…

(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action.

Pa.R.C.P. 2327.

Under Rule 2329, intervention is not allowed when: (1) the claim is in subordination to the propriety of the action, (2) the petitioner's interest is already adequately represented, or (3) the petitioner has unduly delayed in making the application or will cause prejudice. ***See*** Pa.R.C.P. 2329.

In its Rule 1925(a) opinion, the trial court explained its rationale for denying Appellant any relief as follows:

- 11 -

[Appellant] was given an opportunity to demonstrate that he had a right to intervene in Husband and Wife's divorce action. [Appellant]'s petition to intervene was scheduled for a full day protracted trial. Shortly after the protracted trial started, [Appellant]'s attorney stated to the trial court that he believed the parties had a resolution to the entire issue. [Appellant]'s attorney stated that at the time the petition to intervene was filed, [the] Property was for sale and [Appellant] sought to have [W]ife's proceeds from the sale put in escrow. However, the property never actually sold, Husband's equitable interest was purchased by Mr. Tsvik alone, and [W]ife received no money from the transaction. At that point, [Appellant] lacked a legal remedy to collect its judgment against Wife through the divorce action. Therefore, [Appellant] attempted to focus on the wording of Husband and Wife's [PSA and SAMR], which was never before the trial court. There was some discussion concerning the specific wording of the agreement between the parties on the record, but since the only matter before the trial court was [Appellant]'s petition to intervene, and not Husband and Wife's divorce action, the trial judge excused herself from the negotiation between the parties and the record was paused. Parties were told by the trial court that if there was no agreement then the trial court would move forward with [Appellant]'s petition to intervene to see if there was sufficient reason to justify intervention. Instead, all of the parties chose to negotiate off the record.

When the court reconvened, the parties stated they had reached an agreement regarding the wording of Husband and Wife['s] property settlement agreement and mutual release, which was not before the trial court. Specifically, [counsel] for [Appellant] stated: "... that the agreement between the parties after the divorce, the property settlement agreement, and the mutual release has to indicate that the $36,000 would pay for [Husband]'s equitable interest. As long as the term "equitable interest" exists across the plane of the agreement, we have no issue." The trial court reiterated that Husband and Wife's divorce action was not before the trial court, and that if parties had not reached an agreement, the trial court would move forward on the petition to intervene, which was the only matter scheduled before the trial court. By agreement of all parties the matter was continued for a maximum of thirty (30) days for submission of a global settlement. The trial court further stated on the record and in the trial court order that if there was no resolution to the matter received by the court within thirty (30) days, the underlying

- 12 -

petition to intervene shall be dismissed. No party objected, but to address [Appellant]'s concern that the opposing parties would withhold their signature to defeat [Appellant]'s petition to intervene, the trial court put in the order that the petition to intervene would not be dismissed if inequitable behavior could be proved on the part of any opposing party. The only matter before the trial court on October 21, 2020[,] was [Appellant]'s petition to intervene, and there was no discussion of [Appellant]'s right to intervene in Husband and Wife's divorce action during the October 21, 2020 trial. [Appellant] therefore failed to establish the allegations in the petition and waived the resolution of the original petition to intervene unless there was inequitable behavior on the part of the other parties in failing to sign the global agreement.

[Appellant] filed a petition for sanctions on December 7, 2020 stating that two of the opposing parties refused to sign the agreement reached on October 21, 2020 that had been memorialized in writing by [Appellant]'s counsel. The petition for sanctions and the petition to intervene were scheduled for a hearing on March 10, 2021[,] to determine if inequitable behavior from opposing parties prevented the submission of a timely global settlement that resulted in the dismissal of [Appellant]'s petition to intervene.

The negotiations between the parties from October 21, 2020 were not on the record, but [Appellant]'s attorney did state on the record, "Specifically, that the agreement between the parties after the divorce, the [PSA], and the [SAMR] has to indicate that the $36,000 would pay for [Husband]'s equitable interest. As long as the term "equitable interest" exists across the plane of the agreement, we have no issue." Counsel for Mr. Tsvik argued that the Addendum … drawn up to memorialize the parties['] agreement went too far and required Mr. Tsvik to relinquish certain rights to resolve a judgment that [Appellant] had against Wife alone. Mr. Tsvik's attorney asked [Appellant]'s attorney to remove certain language that Mr. Tsvik did not agree to during the negotiations on October 21, 2020, but [Appellant]'s attorney refused to change the [Addendum]. Specifically, Mr. Tsvik's attorney demanded that the language: "It is further recognized that [Husband] has never had any legal interest in the Property" be removed from the [Addendum]. Mr. Tsvik's attorney also demanded the exclusion of "... reference(s) include but are not limited to all references stated in the parties' respective [PSA and SAMR]." What [Appellant]'s attorney stated on the record at the

- 13 -

October 21, 2020 hearing and what the written [Addendum] stated differed enough to give the trial court pause. The trial court found that Mr. Tsvik did not withhold his signature to defeat [Appellant]'s petition to intervene, but refused to sign the document because it contained language that the parties had not previously agreed to on October 21, 2020. The trial court found that the opposing parties did not demonstrate inequitable behavior. In accordance with the Order dated October 21, 2020 [Appellant]'s petition to intervene was dismissed. Based on the same reasoning, [Appellant]'s petition for sanctions was also dismissed.

Trial Ct. Op. at 5-8 (record citations, italics, and some capitalization omitted).

The court further opined that the "record is devoid of any testimony or evidence that [Appellant] had an interest sufficient to justify intervening in Husband and Wife's divorce action, that [Appellant] had any interest in the [Property], or that any interest, if established, had been materially affected by the party's divorce action." *Id.* at 8.

Additionally, the court noted that "[r]eaching a global settlement was not made an element to establish intervention" because "[v]oluntary settlement of claims is highly favored by the judiciary." *Id.* at 9 (citation and quotation marks omitted). The court stated that during the hearing on the petition to intervene, the parties decided to negotiate an alternative resolution that was not before the court and the negotiations were completed off the record. *Id.* The court pointed out that the parties had indicated that an agreement had been reached, but the parties subsequently failed to consummate any global settlement. Further, the opposing parties stated

Appellant was the one who "refused to negotiate, change or modify the words in the proposed settlement agreement that [he] created." *Id.* at 10.

The court also opined there was "no testimony or evidence to establish any allegation that Wife was attempting to evade creditors or had previously intentionally misrepresented her ownership interest" in the Property "to a Montgomery County prosecutor." *Id.* at 10. The court stated, "While all the parties argued on their understanding of Husband[']s ownership interest in [the] Property, no party produced any evidence that Wife's interest in [the] Property had been diminished." *Id.* at 11-12.

Based on the court's thorough and well-reasoned analysis, we would discern no abuse of discretion in its decision to dismiss the petition. Appellant failed to prove that Wife or Tsvik acted inequitably or fraudulently in failing to sign the Addendum, which demanded that they agree that Husband never had a "legal" interest in the property, when Appellant previously requested only that the language reflect a transfer of Husband's equitable interest rather than a percentage of ownership.

Moreover, it merits highlighting the crux of Appellant's argument as discussed at the March 10, 2021, hearing. Wife and Tsvik originally had a 50/50 relationship with respect to ownership of the Property. *See* N.T., 3/10/2021, at 17. Husband, as Wife's spouse, was entitled to an equitable interest in her marital estate, and that portion would be determined by equitable distribution. *Id.* As part of the divorce proceedings and to address

the distribution of the marital property, Wife, Husband, and Tsvik all agreed that Husband owned 25% equitably and that Tsvik would purchase Husband's interest for a cash payment. *Id.* at 38. The court stated that percentage could have been two percent, ten percent, or even 50%, but that 25% was the agreement as set forth in the PSA. *Id.* at 19. The court further noted that with respect to selling his interest, Husband "saw an opportunity[,] and he took it" in order to progress with the divorce proceedings. *Id.* at 23.

As the trial court pointed out, counsel for Appellant repeatedly refused to acknowledge that Husband's "equitable" interest equaled "legal" interest under family law. *Id.* at 32, 39, 48. Moreover, the court noted that Appellant was not able to dictate "what the parties consider to be an equitable interest in their property and what they agree to." *Id.* at 39; *see also id.* at 47 (THE COURT: "But this percentage value is set by someone else other than you, and you don't like that. They set it in an equitable division of their property."). This was based on his status as having a judgment against only Wife, not the other parties or the Property.

Finally, as the court found, there was no evidence of a fraudulent conveyance where the payment for Husband's interest was not an "unreasonable" amount of money in light of the property appraisal and the outstanding mortgage. *Id.* at 42-43, 59-60.

As such, we are in agreement with the court that it had no basis on which to grant the petition to intervene. Appellant was presented with ample

opportunity to present evidence that he had a legally enforceable interest in the Property or that Rule 2327(4) was applicable. He failed to do so. His arguments on appeal do not persuade us otherwise. Accordingly, if this matter was properly before us, we would affirm the court's March 10, 2021, order dismissing Appellant's petition to intervene.

Appeal quashed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 1/20/2022*