2025 PA Super 45

| | | |
|---|---|---|
| MATTHEW SELBOVITZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STREAMLINE SOLUTIONS LLC | : | |
| | : | |
| DANIEL KIRK AND CLARISA KIRK | : | No. 1431 EDA 2023 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NINETEENTH STREET DEVELOPMENT | : | |
| LLC, STREAMLINE SOLUTIONS LLC | : | |
| AND HARMAN DEUTSH CORP. | : | |
| | : | |
| DAVID BUTERA | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NINETEENTH STREET DEVELOPMENT | : | |
| LLC, STREAMLINE SOLUTIONS LLC | : | |
| AND HARMAN DEUTSH CORP. | : | |
| | : | |
| NICHOLAS AUGER | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NINETEENTH STREET DEVELOPMENT | : | |
| LLC, STREAMLINE SOLUTIONS LLC | : | |
| AND HARMAN DEUTSH CORP. | : | |
| | : | |
| | : | |
| APPEAL OF: EVANSTON INSURANCE | | |
| COMPANY | | |

Appeal from the Order Entered June 9, 2023

In the Court of Common Pleas of Philadelphia County Civil Division at No(s): April Term, 2019 No. 01575, Sept. Term, 2019 No. 001268, Sept. Term, 2019 No. 001351, Sept. Term, 2019 No. 001353

BEFORE: OLSON, J., DUBOW, J., and SULLIVAN, J.

OPINION BY OLSON, J.: **FILED FEBRUARY 25, 2025**

In this consolidated matter,[1] Appellant, Evanston Insurance Company, appeals from the June 9, 2023 order entered in the Court of Common Pleas of Philadelphia County that denied Appellant's petition to intervene.[2]  We affirm.

The trial court summarized the pertinent procedural history as follows:

_____

[1] On October 12, 2020, the trial court consolidated, for purposes of discovery and trial, the four cases identified *supra* and filed at trial court docket numbers April Term, 2019 No. 01575, Sept. Term, 2019 No. 001268, Sept. Term, 2019 No. 001351, and Sept. Term, 2019 No. 001353, with the case filed at trial court docket number Sept. Term, 2019 No. 001353 serving as the lead case. Trial Court Order, 10/12/20.

[2] Appellant appeals as of right from a collateral order pursuant to Pennsylvania Rule of Appellate Procedure 313(b).  **See** Pa.R.A.P. 313(b) (stating, "[a] collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost"); **see also Bogdan v. Am. Legion Post 153 Home Ass'n**, 257 A.3d 751, 755-757 (Pa. Super. 2021) (permitting an insurance company to challenge, as a collateral order pursuant to Rule 313(b), an order denying its petition to intervene for purpose of securing special interrogatories relating to damages); **K.C. v. L.A.**, 128 A.3d 774, 780 (Pa. 2015) (stating, an "order denying intervention is one type of order which must be appealed within thirty days of its entry under Rule of Appellate Procedure 903, or not at all, precisely because the failure to attain intervenor status forecloses a later appeal" (citation, original quotation marks, and emphasis omitted)).

In 2019, four plaintiffs[3] brought these consolidated suits against Streamline Solutions, LLC ("Streamline"), Nineteenth Street Development, LLC ("19th Street"), and Harman Deutsch Corporation ("Harman Deutsch") for building and design defects in their new homes. Appellant [] was not a named party in any of the suits, but [it] provided defense counsel to Streamline and 19th Street under their commercial [] insurance polic[ies].

A jury trial started on June 5, 2023, and was scheduled to last ten days, including jury deliberations. [Appellant] filed a petition to intervene, for the purpose of submitting special jury interrogatories,[4] on June 7, 2023. Counsel for [Appellant] and 19th Street's personal counsel [(that is to say, counsel who was not appointed pursuant to the insurance policy to represent 19th Street during the trial)[5]] both sent letters to the trial court throughout the day of June 8[, 2023. Appellant] requested expedited review of [its] petition and [a] shorten[ed] time period [for parties] to respond from 20 days to 1 day. 19th Street[, through its personal counsel,] objected to the last-minute nature of the petition, and requested at least 5 days to respond. The [trial] court held a hearing the morning of June 9, 2023[,] and denied [Appellant's] petition for being so late[, *i.e.*, unduly delayed,] as to cause undue prejudice to plaintiffs.

---

[3] Collectively, the plaintiffs were Matthew Selbovitz, Daniel Kirk and Clarisa Kirk, David Butera, and Nickolas Auger.

[4] Appellant asked to submit special jury instructions to facilitate subsequent determinations of whether any component of the jury's compensatory award, if any, fell outside of the scope of coverage of the insurance policies. Petition to Intervene, 6/7/23, at ¶11 (stating, "special jury interrogatories [] would ask the jury to specifically allocate any damages awarded, so that [an] award of damages, if any, can be allocated between uncovered and potentially covered damages").

[5] 19th Street's personal counsel became involved because, as discussed in greater detail *infra*, defense counsel appointed to represent Streamline and 19th Street under the terms of the insurance policy had a conflict of interest as it pertains to Appellant's request to intervene.

Trial Court Opinion, 9/25/23, at 2 (extraneous capitalization omitted). This appeal followed.[6]

Appellant raises the following issues for our review:

1.    Did the trial court err in denying [Appellant's] petition to intervene for the limited purpose[] of submitting special interrogatories to the jury when the action presented numerous and substantial insurance coverage questions and [Appellant] had a right to intervene, by rule and this Court's controlling authority, to have the jury answer factual questions that would enable [Appellant] and its insureds to allocate the jury's compensatory damages award between uncovered and potentially covered damages?

2.    Did the trial court err in denying [Appellant's] petition to intervene for the limited purpose[] of submitting special interrogatories on the grounds it would be prejudicial when there was no prejudice to any party and the special interrogatories would have caused neither confusion nor delay?

3.    Did the trial court err in denying [Appellant's] petition to intervene for the limited purpose[] of submitting special interrogatories on the grounds it would be untimely when the petition was filed during the pendency of the action?

4.    Since the trial court abused its discretion and committed an error of law in denying [Appellant] intervention, should a fact[-]finder on remand, whether [in] a new jury [trial or in a proceeding before the trial court], answer [Appellant's] special interrogatories?

Appellant's Brief at 3-4 (extraneous capitalization omitted).

_____

[6] The trial court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The trial court filed its Rule 1925(a) opinion on September 25, 2023.

Collectively, Appellant's first three issues challenge the trial court's denial of its petition to intervene. "It is well[-]established that a question of intervention is a matter within the sound discretion of the [trial] court [] and unless there is a manifest abuse of such discretion, its exercise will not be interfered with on review." ***Bogdan***, 257 A.3d at 757 (citation omitted).

Pennsylvania Rule of Civil Procedure 2327 provides,

### Rule 2327.  Who May Intervene

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

(1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the [trial] court or of an officer thereof; or

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.Civ.P. 2327.  Pennsylvania Rule of Civil Procedure 2329 further provides

### Rule 2329.  Action of Court on Petition

Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the [trial] court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if

(1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or

(2) the interest of the petitioner is already adequately represented; or

(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass[,] or prejudice the trial or the adjudication of the rights of the parties.

Pa.R.Civ.P. 2329. "Reading Rule 2329 in conjunction with Rule 2327, the effect of Rule 2329 is that if the petitioner is a person coming within one of the classes described in Rule 2327, the allowance of intervention is not discretionary, but is mandatory, unless one of the grounds for refusal of intervention enumerated in Rule 2329 is present." *Shirley v. Pennsylvania Legis. Reference Bureau*, 318 A.3d 832, 853 (Pa. 2024) (citation and ellipsis omitted).

Assuming the non-party comes within one of the classes described in Rule 2327, a trial court may, in its discretion, deny the request for intervention if, *inter alia*, the party seeking intervention has done so with undue delay or intervention will unduly prejudice the trial. *See* Pa.R.Civ.P. 2329(3); *see also Jackson v. Hendrick*, 446 A.2d 226, 228 (Pa. 1982) (stating, Rule 2329(3) "permits a [trial] court to refuse an application for intervention if the petitioner has unduly delayed in making application for intervention" (quotation marks omitted)); *Maginley v. Robert J. Elliott, Inc.*, 498 A.2d 977, 979 (Pa. Super. 1985) (stating that, undue delay warrants denial of an intervention petition); *In re T.T.*, 842 A.2d 962, 965 (Pa. Super. 2004) (stating, "especially where the party proposing its intervention has had ample

- 6 -

notice and opportunity to protect its interests earlier, [a trial court may deny intervention if allowing] intervention at such a late date would unduly prejudice the interests of a party in whose favor the matter has been resolved" (original brackets and citation omitted)).  As this Court long-ago explained, "[i]t is the general rule that an intervention is not a proper proceeding where it will have the effect of retarding the principal suit, of delaying the trial of the action, or requiring that the case shall be reopened for further evidence, of changing the position of the original parties, or of complicating the case and producing a multifariousness of parties and causes of action."  **Tonkonogy v. Levin**, 162 A. 315, 316 (Pa. Super. 1932).  "The question of whether the putative intervener has been dilatory is one within the discretion of the trial court whose decision will not be disturbed absent a manifest abuse of that discretion."  **T.T.**, 842 A.2d at 964; **see also Jackson**, 446 A.2d at 228-229; 7 Goodrich-Amram 2d § 2329:8 (stating, "[a]s a general rule, [] a long and unexplained delay will bar intervention").

In the case *sub judice*, Appellant contends that the underlying cases against the insured-defendants "presented numerous and substantial coverage questions" as to what portion of a damages award, if any, was covered under the insurance policies.  Appellant's Brief at 13-14.  Appellant argues that, after the trial court determined that defense counsel (that is, counsel provided by Appellant in accord with the terms of the insurance policies to represent Streamline and 19th Street at trial) could not seek jury instructions related to coverage issues because defense counsel's "duties of

loyalty in the action lay with the insured[-defendants [(Streamline and 19th Street)] and not with Appellant's interest,]" the trial court erred in denying its petition to intervene. *Id.* at 12. Appellant asserts that, based upon the trial court's determination regarding defense counsel's representation obligations (defense counsel's duty of loyalty was to Streamline and 19th Street), it was the only entity that could "represent and assert its interests to sort which portions of the jury's compensatory award was uncovered, and which portion, if any, was potentially covered" by the insurance policies. *Id.*

In response, Appellees (collectively, the plaintiffs in the underlying causes of action) contend that Appellant filed its petition to intervene two days after the trial started and after several of plaintiffs' witnesses had already testified. Appellees' Brief at 10. Appellees assert that Appellant's filing of a petition to intervene at this point during the trial was prejudicial because plaintiffs' "expert strategy may have been different to address aspects of damages and timing[, and, moreover, Appellant's proposed] jury interrogatories risked confusing the jury." *Id.* Appellees argue that Appellant admitted it was aware eleven months prior to filing its petition to intervene that there were "insurance coverage issues." *Id.* at 11. Appellees contend that, despite knowing of the "insurance coverage issues," Appellant, without explanation, delayed filing a petition to intervene until after plaintiffs began presenting their case to the jury. *Id.* at 11-13. For these reasons, Appellees

assert, the trial court did not abuse its discretion in denying the petition to intervene.[7] *Id.* at 13.

In denying Appellant's petition to intervene, the trial court explained,

Since [Appellant] was providing the legal defense for Streamline and 19th Street, [it] had long been aware of this action and the possible coverage issues. Nevertheless, [Appellant] did not file a declaratory judgment action nor did [it] petition to intervene and submit [its] special interrogatories until after the trial had already begun. The [trial] court noted that had [Appellant] brought [its petition] even a week before the trial [started, its] petition would have been viewed far more favorably. Plaintiffs' counsel explained that had [plaintiffs] had the opportunity to consider the information submitted in the interrogatories sooner, they may have presented an expert on certain categories of damages or focused more heavily on issues relating to the timing of the underlying events. The [trial] court agreed.

Ultimately, granting [Appellant's] eleventh-hour petition to intervene would have unduly prejudiced plaintiffs and likely caused a delay in the trial.

Trial Court Opinion, 9/25/23, at 4 (record citations and extraneous capitalization omitted).

Upon review, we discern no abuse of discretion in the trial court's order denying Appellant's petition to intervene on the grounds that Appellant unduly delayed presenting its petition to intervene and intervention would prejudice the trial and the adjudication of plaintiffs' claims. The record demonstrates

_____

[7] Counsel, who represented the individual interests of 19th Street with regard to the petition to intervene, filed a letter with this Court on September 3, 2024, indicating that 19th Street "joins in the arguments made by [Appellees] and incorporates their brief as through fully set forth herein." 19th Street Letter, 9/3/24.

that defense counsel appointed by Appellant pursuant to the terms of the insurance policies entered his appearance on September 15, 2020. *See* Entry of Appearance, 9/15/20. Thus, at some point prior to September 15, 2020, Appellant became aware of the nature of the claims against its insureds and that insurance coverage under its policies may be triggered by the claims thereby requiring Appellant to provide a defense.

On July 14, 2022, the trial court entered an order that, *inter alia*, directed "all person who have the authority to negotiate and settle the case," which included the parties, an insurance representative, and anyone who is needed to ratify a settlement agreement, to participate in a **mandatory** settlement conference. Trial Court Order, 7/14/22. As counsel to Appellant stated, Appellant put Streamline and 19th Street on notice in July 2022, and again in December 2022, that there were "coverage issues," namely that some aspects of potential recovery by the plaintiffs may not be covered under the terms of the insurance policies. N.T., 6/9/23, at 20; *see also id.* at 25 (stating, "I [(referring to Appellant's counsel)] clearly put the parties on notice that there were issues with coverage"). Thus, as early as July 2022 (and perhaps earlier), Appellant understood that there was a need for special jury interrogatories to facilitate a later assessment of which components of any compensatory damage award would be covered under the terms of the insurance policies.

On July 22, 2022, the trial court scheduled jury selection to commence on June 1, 2023, and the start of trial on June 5, 2023. *See* Trial Court Order,

7/22/22, *see also* Trial Court Order, 7/26/22. On June 7, 2023, after the start of trial, Appellant filed a petition to intervene "for the limited purpose of proposing special jury interrogatories that would ask the jury to specifically allocate any damages awarded, so that [an] award of damages, if any, can be allocated between uncovered and potentially covered damages insured by the [insurance policies.]" Petition to Intervene, 6/7/23, at ¶11. Appellant asserted, in its petition, that its "interests are not protected by any party to the [a]ction, and allocation of any verdict is needed to avoid a general verdict that would make it difficult, if not impossible, to determine what damages, if any, are potentially covered by the [insurance policies] and which, if any, are excluded from coverage." *Id.* at ¶12.

To support its petition to intervene, Appellant relied on this Court's decisions in ***Bogdan***, ***supra***, and ***Butterfield v. Giuntoli***, 670 A.2d 646 (Pa. Super. 1996) for the proposition that "an insurer should seek special interrogatories to address issues as to whether damages that may be awarded are within or outside of the coverage afforded by its policies." Petition to Intervene, 6/7/23, at ¶39. While we agree that Rule 2327 permits an insurer to intervene in a case for purpose of pursuing special interrogatories to address allocation of any damages awarded, *i.e.* damages covered by the policy verses damages not covered by the policy, such intervention does not, in accord with Rule 2329, come without discretionary limitations. ***See Shirley***, 318 A.3d at 853; ***see also*** Pa.R.Civ.P. 2327, Pa.R.Civ.P. 2329.

- 11 -

In **Butterfield**, **supra**, a jury, in the underlying medical malpractice case, awarded, *inter alia*, punitive damages as part of a general verdict in favor of Butterfield and against four defendant-physicians and the hospital that employed the four physicians. **Butterfield**, 670 A.2d at 648. While the interests of the hospital's insurer were represented during the underlying medical malpractice trial,[8] none of the parties, including the insurance company, requested special interrogatories to confirm whether the jury imposed direct or vicarious liability against the hospital. **Id.** Butterfield, upon receiving judgment in her favor in the underlying case, filed a *writ* of execution to garnish and execute upon the debt. **Id.** at 649. On cross-motions for summary judgment filed by Butterfield and the insurance company in the garnishment action, the trial court found that Butterfield "could not meet [her] burden of proof on the issue of whether the [insurance] policy covered the punitive damages [entered] against [the hospital] because [she] could not show whether the damages were assessed vicariously, for which there may be coverage under Pennsylvania law, or whether the damages were assessed directly, for which coverage [was] precluded." **Id.** at 650. As such, the trial court denied summary judgment in favor of Butterfield and granted summary judgment in favor of the hospital's insurance company. **Id.** On appeal, this

---

[8] The hospital's insurer was "present in the courtroom every day of the trial[, attended] all discussions held in chambers between the parties[, and] was in regular contact outside of court with the defense attorneys handling the case. In essence, [the insurer] fully participated in [the] case short of entering [its] appearance." **Butterfield**, 670 A.2d at 658.

Court found that the insurance policy was ambiguous and neither specifically included nor excluded coverage for punitive damages. *Id.* at 653. Finding no specific exclusion of coverage for punitive damages in the policy, this Court held that Butterfield met her burden of showing potential coverage of the claim for punitive damages and that the burden shifted to the insurance company to, *inter alia*, prove that the jury assessed punitive damages solely on the basis of direct liability and that such damages were excluded under the policy. *Id.* at 654, 657. Ultimately, this Court held that the insurance company did not satisfy its burden. *Id.* at 658. This Court reasoned that, "[w]hile in court, in chambers, or through the defense attorneys handling the case, [the insurance company] had the opportunity to request specific instructions on the question, specific interrogatories, or special verdict forms." *Id.* Moreover, this Court explained that, pursuant to Rule 2327(1), the insurance company had the right to seek intervention, if necessary, to resolve the issue. *Id.* at 658 and n.15. This Court found that the insurance company "had the opportunity to resolve the issue by submitting specific instructions, specific interrogatories before or immediately after the verdict, or by seeking intervention, yet declined to do so based on its own independent assessment of the law." *Id.* at 658.

While we agree with Appellant that **Butterfield**, **supra**, stands for the proposition that an insurance company, such as Appellant, has the right to seek intervention, pursuant to Rule 2327(1), for the purpose of submitting special interrogatories regarding damages; **Butterfield** does not go so far as

to **automatically** permit intervention by an insurance company for the purpose of submitting special interrogatories at any point during the pendency of a case. Rather, the Court in **Butterfield** simply reenforced that Rule 2327 permits a non-party, such as Appellant, to seek intervention but did so without analyzing (because intervention was not actually sought in **Butterfield**) whether intervention would satisfy the requirements of Rule 2329, *i.e.*, the absence of undue delay and prejudice. **See Shirley**, 318 A.3d at 853 (requiring an analysis under 2329 if the party seeking intervention satisfies Rule 2327).

Similarly, we find Appellant's reliance on **Bogdan**, **supra**, to be of no avail. In **Bogdan**, Bogdan brought an action against the American Legion Post 153 ("American Legion") for negligence, negligent security, and punitive damages. **Bogdan**, 257 A.3d at 753. The American Legion's insurance company provided the establishment a legal defense in the underlying suit, subject to the right to deny coverage under, *inter alia*, a punitive damages exclusionary clause in the insurance policy. **Id.** While the underlying case was **still in the discovery stage**, the insurance company filed a petition to intervene "for the purpose of securing a special jury verdict form and answers to interrogatories to allow a clear determination of the basis for the jury's verdict[.]" **Id.** at 754. The trial court denied the insurance company's petition to intervene pursuant to Rule 2329(3), finding that the insurance company acted with undue delay in bringing the petition. **Id.** at 754, 757-758. The trial court reasoned that, without explanation, the insurance company filed its

petition to intervene nearly two years after the underlying lawsuit commenced and, in so doing, wasted two years in which the insurance company "could have been a party and pursued a litigation strategy to ensure that its interests were protected." *Id.* at 757. In finding that the trial court abused its discretion in denying the petition to intervene, the ***Bogdan*** Court found that the insurance company "had no reason to be involved until special interrogatories in relation to the verdict could be submitted[ and, therefore,] could not have 'wasted two years' as the parties still had not finished the discovery stage at the time [the insurance company] filed its petition to intervene." *Id.* at 758.

We find the circumstances under which the ***Bogdan*** Court reversed the trial court's order denying intervention to be factually distinct from the case *sub judice*. In ***Bogdan***, as this Court explained, the petition was filed **before the completion of discovery** and **before the start of trial** while, in the case *sub judice*, Appellant filed its petition to intervene **after the completion of discovery** and **after the start of trial** at a point when the plaintiffs had already presented a portion of their case-in-chief. *Id.* As the ***Bogdan*** Court explained, it was not undue delay for the insurance carrier to forgo seeking intervention because discovery was still ongoing and the time for the submission of special interrogatories had not yet ripened. *Id.*

In the case *sub judice*, as the trial court found, and the record supports, Appellant did not file its petition to intervene until almost 11 months after it informed Streamline and 19th Street of coverage issues that necessitated

special interrogatories, and only after the start of the trial following plaintiffs' presentation of a portion of their case-in-chief. *See* Trial Court Opinion, 9/25/23, at 2; *see also* N.T., 6/9/23, at 14. Moreover, the record reveals that, by the time Appellant submitted its petition to intervene, the parties had already begun to formulate jury instructions, as evidenced by the submission of points of charge prior to the start of trial, on May 25, 2023. Under these circumstances, we concur with the trial court that Appellant acted with undue delay in filing its petition to intervene for the limited purpose of special interrogatories, because Appellant knew, at least as early as July 2022, of coverage issues surrounding a potential general verdict in favor of plaintiffs. *See* Pa.R.Civ.P. 2329(3).

We also concur with the trial court that intervention at this stage would have been prejudicial to the plaintiffs as they had already presented a portion of their case. As counsel for plaintiffs stated, if Appellant's petition to intervene had been filed prior to the start of trial, plaintiffs "may have presented an expert on certain categories of damages [or] expert testimony that focused more heavily on [] certain timing issues [of damages, which may have affected the coverage of those damages under the terms of the insurance policies]." N.T., 6/9/23, at 14-15; *see also* Trial Court Opinion, 9/25/23, at 4.

Order affirmed.[9]

_____

[9] In light of our disposition herein, we dismiss Appellant's fourth issue as moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>2/25/2025</u>